**GAMEZ et al. v. UNITED STATES.**

Civ. A. No. 634.

United States District Court
S. D. Texas, Brownsville Division.

Feb. 10, 1951.

---

2. Harding, Whitman & Co. v. York Knitting Mills, C.C.M.D.Pa., 142 F. 228.

Reynaldo G. Garza, R. A. Hightower, Brownsville, Tex., for plaintiffs.

Brian S. Odem, U. S. Atty., Bruce R. Merrill, Asst. U. S. Atty., Houston, Tex., for defendant.

ALLRED, District Judge.

Plaintiffs, the mother and father, respectively, of Everardo S. Gamez, sue as beneficiaries on a claimed contract of National Service Life Insurance pursuant to Section 19, World War Veterans' Act of 1924, as amended, and Section 617, National Service Life Insurance Act of 1940, as amended, 38 U.S.C.A. §§ 445, 801 to 818.

Gamez entered active military service on November 5, 1942. On September 23, 1943, while in such service and stationed at the Harlingen Army Air Field, the veteran applied for $5,000 National Service Life Insurance. The application was assigned a number and marked, "effective October 1, 1943." Monthly premiums of $3.25 per month were deducted from the soldier's pay from November 1, 1943 through February 28, 1947, there being no contention that any premiums are due or were not paid.

On the same day the application was made, Gamez was admitted to the Harlingen Army Air Field Station Hospital for treatment for "gonorrhea, chronic, old." He was in the hospital 15 days. The application inquired whether Gamez was suffering or had suffered with many diseases; but did not inquire as to gonorrhea.

On December 1, 1943, the Veterans Administration wrote Gamez's Commanding Officer, at Harlingen, Texas, calling attention to the fact that under the National Service Life Insurance Act a physical examination of the soldier should be made by a medical officer on active duty. The

letter enclosed a supplemental application form, to be completed in full, signed by the applicant and by the medical officer. The letter further stated that deductions for premiums should be made monthly. These deductions were made for more than four years thereafter.

The record is silent as to whether the letter to Gamez's Commanding Officer, with reference to the physical examination, was ever called to the soldier's attention; or whether he was still at Harlingen, or where he was stationed.

The veteran departed for overseas service on July 10, 1944. He was discharged, while serving in the military forces overseas, on October 24, 1945, at Casa Blanca, Morocco. A report of his physical examination upon discharge shows he was in good health at the time.

On the following day, October 25, 1945, Gamez re-enlisted, at Casa Blanca. He departed from his overseas station, for return to the United States, on November 4, 1945.

On October 10, 1946, Gamez was admitted to A.A.F. regular Station Hospital, A.A.F., M.T.C., San Antonio, Texas, on account of a disease finally diagnosed as lymphatic leukemia. This desease resulted in 100% disability since October 10, 1946. This 100% disability was incurred by Gamez while serving in the military forces of the United States.

On October 24, 1946, exactly one year after Gamez's discharge and re-enlistment, the "Chief Underwriting Service, NYB," wrote the Commanding Officer of "Private Everardo S. Gamez, 18 200 991, % Adjutant General's Office, War Department, Washington (25) D.C.," with reference to the application for National Service Life Insurance executed on September 23, 1943, "by the above named member of your command," this letter from the "Chief Underwriting Service" called attention to the fact that another of the original forms for physical examination should be executed by Private Gamez and the Medical Examiner's Report should be signed by the medical officer on active duty. There is no showing as to what happened to this communication.

On February 26, 1947, Gamez was given an honorable C.D.D. discharge (one given for medical reasons). After his discharge, and on March 26, 1947, the veteran filed an application for waiver of premiums on his insurance. He died May 29, 1947, from the lymphatic leukemia which he had incurred while serving in the military forces and which had produced 100% disability while he was in such service.

After Gamez's death, and on November 20, 1947, the Disability Insurance Claims Division of the Veterans Administration held that the insured was "continuously totally disabled for the purpose of waiver of premiums, under the provisions of Sec. 602(n) of the National Service Life Insurance Act of 1940, as amended, from October 10, 1946 to the date of his death, on May 29, 1947."

On December 8, 1947, nearly six months after Gamez's death, the Insurance Medical Division and the Veterans Administration branch office at Dallas, Texas, rejected the original application upon the ground that the soldier was hospitalized at the time of the application and was *not then in good health.*

Plaintiffs, the named beneficiaries under the original application for insurance, duly presented their claims to the Veterans Administration, Board of Veteran Appeals. On July 12, 1949, the Veterans Administration made its final administrative denial of the claim. This action followed.

Plaintiffs contend that the undisputed facts bring Gamez within the provisions of Subsection (c) (3). Amendment of August 1, 1946, to the National Service Life Insurance Act of 1940, Title 38 U.S. C.A. § 802(c) (3), reading, in part, as follows: "Any person in the active service between *October 8, 1940,* and *September 2, 1945,* both dates inclusive, who, *while in such service,* made application in writing for insurance *while performing full military or naval duty,* which application was denied solely on account of his condition of health, and the applicant *thereafter*

*shall have incurred a total and permanent disability in line of duty* or died in line of duty, shall be deemed to have applied for and to have been granted such insurance as of the date of such application and such insurance shall be deemed to be or to have been continued in force to the date of death of such person. In any case in which insurance deemed to have been granted under this paragraph matures or has matured, there shall be deducted from the proceeds of such insurance the premiums payable thereon from the date of application to the date of incurrence of total and permanent disability in line of duty or to the date of death, if permanent and total disability was not incurred. * * *" (Italics supplied.)

Defendant denies liability on several grounds which will be discussed as stated:

▉▉▉▉ First: Pointing to the requirement that the application must have been made "while performing full military or naval duty," defendant says that since Gamez was in the hospital at the time and on the day that he made the application, he was not performing "full military duty;" that in view of AR 35–1440, the ailment was not contracted in line of duty. In view of the liberal construction that should be given to veterans under the provisions of the National Service Life Insurance Act, I believe that a soldier who was in the hospital, under the circumstances herein set out, suffering from a chronic condition, was performing "full military duty."

▉▉▉▉ Second: Defendant says the Administrator of Veterans Affairs has ruled that, in order for the quoted section to apply, the death or total disability must have taken place by September 2, 1945, the last inclusive date mentioned in the section. Defendant quotes from an opinion by the Solicitor for the Veterans Administration, which is entitled to weight but not controlling on the Courts. Proper construction turns on the meaning of the words "and the applicant *thereafter* shall have incurred a total and permanent disability in line of duty".

In the regulation (R. & P. R. —3500), the Administrator has inserted the words "during such period of active service" after the word "thereafter"; so that it reads, (as the statute does not), "and such applicant thereafter *during such period of active service* shall have incurred a total and permanent disability in line of duty * *."

If Congress had inserted the words emphasized in the regulation, the meaning would be clear. But Congress did not use them. There has been no judicial construction of this section.

The opinion of the Solicitor quotes from Senate Report No. 1705, 79th Congress, July 12, 1946, as follows:

"* * * Your committee are informed that in many instances the applications of servicemen for insurance were denied because they were held not to be in the required condition of health. The men, however, were retained in active service and many were killed or wounded in combat notwithstanding their so-called lack of good health.

"'The provisions of this subsection grant insurance to such of those men only as *become* permanently and totally disabled in line of duty or *died* in line of duty. The provisions of this subsection will remedy injustice to such men which was directly due to the excessively restricted limitations on applications for insurance by men on active duty in time of war.'" (Emphasis supplied).

It seems to me that the portions emphasized in the above Report should lead to the very opposite conclusion as to the intention of Congress from that arrived at by the Solicitor. In the statement: "The provisions of this subsection grant insurance to such of those men only as *become* permanently and totally disabled in line of duty or *died* in line of duty," the distinction between the present tense "become" and the past tense "died" is significant to my mind. If it read "became," instead of "become," it would indicate that the Solicitor General is correct.

The Solicitor's opinion says that to construe the clause favorably to the contention of complainants would mean that there would be no limitation whatever in respect to the time of occurrence of such total and

permanent disability; that it would result in protection ten, twenty; or any number of years hence, for one who at such time should become totally and permanently disabled or should die in line of duty, if such person had an application rejected because of health between October 8, 1940 and September 2, 1945.

It seems to me that the Solicitor's argument is far-fetched, at least as applied to this case. Here we are dealing with a veteran, who continued in service without interruption until his discharge on account of total and permanent disability incurred in line of duty. He applied for insurance within the period prescribed by Congress. He served overseas. His application was not rejected during his lifetime. It was denied *after his death* on the ground that he was not in good health at the time of the application; although he continued his service overseas, was discharged and immediately re-enlisted.

Gamez suffered total permanent disability in line of duty. The premiums on the insurance, *which had never been rejected,* were deducted from his pay until he was discharged. It is not and cannot be contended that the gonorrhea, for which he was hospitalized at the time of his application, had anything to do with the lymphatic leukemia which produced his disability and caused his death. It is senseless to argue that he was not in good health at the time of making his application simply because the War Department's red tape seemingly never caught up with him, so that the additional form could be filled out.

While I do not believe, as plaintiffs contend, that the Government is estopped, I am unwilling to hold that Congress ever intended the injustice that will be done by the construction placed upon the Act by the Administrator.

Third: Defendant contends that this Court has no jurisdiction since 38 U.S.C.A. §§ 445, 817, "contemplates only suits and claims under a contract of insurance;" defendant's position being that there is no contract of insurance here but only an application which was denied after Gamez's death. The purpose of the amendment of August 1, 1946, 38 U.S.C.A. § 802(c) (3), was to recognize as a contract of insurance what should have been issued where an application was made during the stated period, even though no policy was issued. It was to do that which should have been done and was not done. Therefore, there is no merit to the Government's contention that the Court is without jurisdiction because the policy actually was not issued.

Judgment will be for the plaintiffs.

The foregoing Memorandum was originally filed June 3rd, 1950. The defendant appealed but subsequently dismissed the appeal.

In view of the absence of a decision by any other Court on this important question, I am submitting this Memorandum for publication.